# UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**David C. Corson**       (
P.O. 233                        (
Chloe, West Virginia, 25235     (
1-304-655-8581                  (
    Plaintiff            (
                       (
    v.                   (
                       (
**James B. Peake**              (
Secretary of Veterans Affairs   (
United States Department of Veterans (
Affairs                         (
810 Vermont Ave.                (
Washington, D.C.  20402         (
                       (
    Defendant            (
                       (

**FILED**

APR 9 – 2009

U.S. DISTRICT COURT
CLARKSBURG, WV 26301

DOCKET NO.

**MOTION FOR DECLARITORY, INJUNCTIVE AND SPECIFIC PERFORMANCE RELIEF AND MOTION FOR JURY TRIAL**

## COMPLAINT

## INTRODUCTION

1.      Comes now David C. Corson, Pro Se Plaintiff, and states that he is a 100% Disabled American veteran with PTSD and files this Complaint  with this honorable Court.

2.      This case stems from the failure of the Veterans Administration to honor its commitment to this veteran. The  Veterans Administration has  violated this Plaintiffs rights under 42 U.S.C. 1985 (3) (2009), the Veterans Judicial Review Act, and other Title 38 laws.

## CAUSE OF ACTION

3.      This is an action on behalf of this veteran to challenge the constitutionality of the Rating Decision  process of the Veterans Administration for its multiple due process failure in those proceedings [1] and its failure to provide Strict Scrutiny review of a protected property interest,

---

[1]  38 CFR 3.104, 3.105 (2001): *"Entitlement to an earlier effective date for an increased rating may be established by showing that the VA committed a CUE in a prior rating decision." Link v. West,* No. 97-495, dated 11-18-1998;

veteran's benefits , after the 1975 and 1980 precedent opinions making Veteran's benefits a protected property interest under the 5th and 14th Amendments.

4.      This is an action  on behalf of this veteran to  challenge the constitutionality of provisions in the Veterans Judicial Review Act of 1988, in conjunction with related, pre-existing statutes and a pattern of illegal policies and practices of the Department of Veterans Affairs.

5.      That this veteran has been denied  veterans benefits to which he is entitled as a  result of the Veterans Administration carefully and premeditated  conspiracy to delay, deny or in violation of the law, withhold lawfully earned benefits.

**JURISDICTION**

6.      The Court has jurisdiction over  this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. 241 (2009) and 42 U.S.C. 1985 (3) (2009), and Section 504 of the Rehabilitation Act of 1973. The action arises from  the  Constitution of the United States and Plaintiffs seek to redress violations of the  Fifth Amendments of the United States Constitution. Plaintiffs also challenges  the constitutionality of the VJRA and related provisions in Title 38  U.S.C. *See Johnson v. Robison*, 415 U.S. 361, 373 (1974) (district courts have jurisdiction to consider constitutional challenges to statutes administered by VA); *Disabled Am. Veterans v. United States Dep't of Veterans Affairs*, 962 F. 2d 136, 140-41 ( 2d Cir. 1992) (same); *Broudy v. Mather*, 460 F. 3d 106 ( D.C. Cir. 2006); *Bowen v. City of New York*, 476 U.S. 467 (1986).

7.      This case having been submitted in Propria Persona,  Plaintiff request the honorable Court that pleadings be considered without regard to technicalities. Propria pleadings should not be held to the same high standards of perfection as practicing lawyers. See Haines v. Kemer, 925 Ct 594; Power 914 F. 2d 1459 ( 1 Cir 1990); See In Re: Hall v. Bellmon 935 F. 2d 1106 ( 10th Cir. 1991);  See  Szemraj v. Principi, 357 F. 3d 1370 ( Fed. Cir. 2004); Moody v. Principi, 360 F. 3d 1306 ( Fed Cir. 2004);

8.     This being legal sufficiency to show Appellant is entitled  to relief under his Complaint. A complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the Appellant can prove no set of facts in support of his claim which would entitle him to relief.  *See Conley v. Gibson, 355 U.S. 41, 45-46 (1957); See also Neitze v. Williams 109 S. Ct. 1827, 1832 (1989);*

## PROCEDURAL DUE PROCESS

9.     The 5th Amendment of the Constitution requires that this veteran be given Procedural Due Process in any hearing  or rating decision provided by the Veterans Administration.   Due Process is defined as a meaningful hearing as to time and place, and that the  hearing be conducted in a manner consistent with the due process clause of the  5th and 14th Amendments. This simple statement, *Consistent with the due process  clause of the 5th and 14th Amendments,* is central to the veteran's arguments  of violations of due process in the veterans rating decisions.

10.     In the 1983, the 2001, and the 2008 BVA decisions, this veteran argues that the facts known at the time were not before the adjudicator and also that the laws extant at the time of the decision were incorrectly applied, and further that as a result of these errors of both law and fact, the outcome would have been manifestly different but for those errors.   The manner in which the VA conducts  procedural due process in a rating decision is at the crux of this veteran Arguments. *( See Mathews v. Eldridge, 424 U.S. 319, 333 (1997); See also Rosler v. Derwinski, 1 Vet. App. 241, 249 (1991);*

11.     At the heart of this matter is this veteran's claim for a service connected disability which has either been denied a rating increase or a service connected disability which has been terminated or  in an already service connected disability in which a request for TDIU  or E.E.D. for TDIU has been submitted by the VA Physician in a C& P exam,  but  the claim for  increase or

TDIU  or Earlier Effective Date for TDIU determination has  never been addressed, discussed, evaluated, adjudicated,  or rated in any rating decision. *See the Protected Property clause of the 5th Amendment)*;

## CONTITUTIONAL CHALLENGE: STRICT SCRUTINY  AND OTHER VIOLATIONS OF 42 U.S.C. 1985 (3) (2009)

## CHALLENGE # 1:  STRICT SCRUTINY

12.     This veteran now brings a Constitutional challenge to the VA's  rating decision process after the precedent opinion,  Plato v. Roudebush, 397 F. Supp.12195 ( D. Md. 1975), and Devine v. Cleland, 616 F. 2d 1080 ( 9th Cir. 1980),  for the VA's failure to use strict scrutiny in its review of a protected property interest, service connected veterans benefits, in each rating decision after 1975.  The veteran argues that after 1975 any review,  or Appeal of a termination of a service connected disability or a denial of an increase of a service connected  disability must be made under strict scrutiny.

## CHALLENGE # 2:  JURISDICTIONAL ISSUES

13.     This veteran challenges the  BVA rating decisions of  1980, 1983, 2001, and 2008, on the grounds of  procedural violations of Adjudicative and Jurisdictional errors of law. This  challenge is based on the failure of the 1983 BVA decision on appeal, Docket # 82-30 968, the  10-9-2001 BVA decision on Appeal,  Docket # 00-02 166A, and the 2008 BVA decision, Docket # 07-38-678 dated 6-19-2008, to adjudicate prior reasonably raised issues in the respective BVA decision.

## CHALLENGE # 3:  ILLEGAL SEVERANCE

14.     Further, the veteran  also challenges the illegal severance in the 1980 rating decision on the bases of violations of a protected property interest , a service connected disability,  D.C. 6820--

4

New growth of a tumor and Epistaxis recurrent, after the precedent opinions of 1975 and 1980. The 1980 VA rating decision illegally severed the S.C. Disability, New growth and Epistaxis, which had been in effect for 19 years. This action violated 38 C.F.R. 3.957 (1980) and 38 C.F.R. 3.105 (d) (1980). This 1980 rating decision also failed to provide a Strict Scrutiny review prior to termination of a Protected Property Interest, Veterans Benefits.

## CHALLENGE # 4: PROCEDURAL DUE PROCESS

15.     This challenge is that of Due Process in rating decisions from 1962 thru 2008. That law deals with a fundamental right of this Plaintiff to Due process in Rating Decision procedures which, because of the ongoing conspiracy of failure to rate using Strict Scrutiny, violations of the VJRA and violations of the provision of Title 38 U.S.C., and Section 504 have prevented a fair and impartial Rating decision process.

## CHALLENGE # 5: EARLIER EFFECTIVE DATE FOR T.D.I.U.

16.     This challenge is to the Earlier Effective Date for TDIU decisions of 2008. Total Disability Individual Unemployability, (T.D.I.U.), was granted in 1999, but an Earlier Effective Date for T.D.I.U, (E.E.D. for T.D.I.U.), retro -active to the original 9-6-1963 T.D.I.U. claim has never been adjudicated based on that 9-6-1963 I.U. claim. Therefore, the VA violated 38 CFR 3.303 (a) (1963) because the decision was not made on all of the evidence. The 9-6-1963 T.D.I.U. pending claim never adjudicated, has been pending for 45 Years and must be considered in any adjudication of an E.E.D. FOR T.D.I.U.

## CHALLENGE # 6: FAILURE TO ADJUDICATE

17.     This veteran argues that the laws extant at the time of each decision, 38 CFR 3.303 (a) and 38 U.S.C. 1110, were not followed and that the facts in evidence were intentionally ignored . In the 2001 BVA decision, the 6-11-2001 Substantive Appeal brief of this veteran was ignored. The BVA rating decisions of 2001, which reviewed the 1983 BVA decision, by failing to adjudicate the

16 reasonably raised issues in the 6-11-2001 Substantive Appeal violated procedural due process. Because the 2001 BVA decision which reviewed the 1983 BVA decision  and the 2008 BVA decision which reviewed the 2001 BVA decision both failed to adjudicate any reasonably raised issue  from the 6-11-2001 Substantive  appeal, and subsequent substantive Appeal issues, both of these rating decisions violated procedural due process and  are continuing acts in the conspiracy to delay, deny or otherwise withhold lawfully earned benefits.

## CHALLENGE # 7:  TO THE 2008 BVA  DECISION

18.      This  challenge is to the  2008 BVA  Decision.  Plaintiff's challenges the use of  38 CFR 20.1409 (c )  in the 2008 BVA decision. That decision  reviewed  the  1983 and 2001 BVA decisions. The error  lies in the Boards interpretation of 38 CFR 20.1409 (c ) itself , relating to prior Board decisions. 38 CFR 20.1409 (c )  explicitly states: *"Once there is a final decision on a motion under this subpart relating to a prior Board decision on <u>an issue, that prior Board decision on that issue is no longer subject to revision on the grounds of clear and unmistakable error."* ( underlining added).* The law speaks to an issue, each issue,  each separate issues.   Neither the 2001 nor the 2008 BVA decisions adjudicated the reasonably raised issues in the 6-11-2001 Substantive appeal . This was a procedural error of law. And the 5-12-2006 rating decisions failed to provide reason, bases, cite to the laws upon which the decision relied and give an explanation of how those laws effected the decision violating 38 U.S.C. 7104.  Therefore, if a prior reasonably raised issue is not addressed in the 2001 or 2008 BVA  final Board decision, it cannot be subsumed by that decision and remains un-adjudicated.  38 CFR 20.1409 ( c) cited in the 2008 decision was wrongly interpreted and applied by the 2008 BVA decision.

19.      Further each decision which failed to adjudicate the 9-6-1963 T.D.I.U. claim continues the conspiracy.

## ACTS FOSTERING A CONSPIRACY TO DENY, DELAY OR OTHERWISE WITHOLD BENEFITS.

20.. The VA's has committed the following known acts within the conspiracy to deprive this veteran of his legally earned service connected veterans benefits.

a. The withholding of an adjudication of the 9-6-1963 claim of I.U. For 46 years;

b. the illegal 1980 severing of the S.C. Disability New growth and epistaxis;

c. On 7-14-1980 the libelous statements by Dr. Jensen were conveyed to the VA Regional Office of this veteran being a cocaine user without benefit of lab tests to prove his innocence;

d. the destruction of the 8-26-1980 C& P exam;

e. the destruction of the 2004 C& P exam;

f. in the 1962/63/64 decisions,the failure to follow 38 CFR 1155 (1962), to rate separately, new growth and epistaxis or rate on all of the evidence for Sinusitis in the veteran's service medical records and C-files;

g. the failure to use the proper and applicable criteria for DC 6820 in the 1962-63-64 and 1980 rating decisions as required by 38 U.S.C. 1155 (1962), 3.303 (1980), 7104 (a) (4), 4004 (1980) and 38 CFR 4.97- DC 6820;

h. in the 1980 decision, the failure to follow 38 CFR 3.957 (1980) or 38 CFR 3.105 (e) when it illegally severed New growth and Epistaxis;

i. the retaliation for filing an E.E.O.C. Complaint # 80-495 by destruction of the 6-26-1980 C& P exam, the sending of libelous/slanderous information to the RO. by Dr. Jensen, which allowed the falsification of the 8-26-1980 rating decision, and the failure to rate on ten VA form 10-10m clinical hospital and admission office reports of sinusitis in the 1980 decision.

j. the failure to rate prior reasonably raised issues from : ( 1. the 7-15-1981 VA form I-9, or the pending un-adjudicated 9-6-1963 I.U. Claim, ( 2. the 6-11-2001 substantive appeals in the

1983, 2001 and the 2008 BVA decisions;

k.      the use of Dr. Bogg's and Dr. Noran's evidence favorable to the VA but refusing to use evidence favorable to the veteran in the same reports in the 1983 BVA decision;

l.      the 1962 decision failure to rate diagnosis # 3;

m.      the failure to rate T.D.I.U. in the 12-13-1963 decision;

n.      the refusal to separately rate New growth and Epistaxis in the 1962,1964, the 1980, the 1999 and all subsequent rating decisions as requested in the 6-11-2001 substantive appeal and as required by 38 CFR 3.303 (a) (1962);

o.      the delaying of C& P exams ordered before rating decision until after the decision;

p.      In 2001 ,the BVA decision on Appeal reviewed the 1983 BVA decision which contained a statement of an equipoise of evidence for TDIU, but failed to rate under 38 U.S.C. 5107 (b) as required. This forced the veteran to support his claim by a preponderance of evidence.[2]

21.      Plaintiffs re-allege and incorporate into each claim for relief below by reference as though fully set forth,each and every allegation contained in Paragraphs 1 through 62 of this Complaint.

22      The Plaintiff having contacted the counsel for the defendant by phone in an attempt to resolve this conflict, and having no success in his efforts, the Plaintiff now asks the Court for relief.

## CONSTITUTIONAL CHALLENGE TO THE VETERANS JUDICIAL REVIEW ACT.(V.J.R.A.)

23.      On 2-15-2000, this Appellant entered a request for "Reconsideration of R.O. Decisions" to

---

[2] *"AS FOR TDIU, THERE IS EVIDENCE OF RECORD WHICH BOTH SUPPORTS AND DOES NOT SUPPORT THE VETERAN'S CLAIM OF UNEMPLOYABILITY.");* ( *"To deny a claim on the merits the evidence must preponderate against the claim, but to favorably determine entitlement to the benefit sought, the evidence must only be in equipoise... where evidence is in equipoise, the decision must be in favor of the claimant. Alemany v. Brown, 9 Vet. App. 518 (1996);*

the Board of Veterans Appeals, Department of Veterans Affairs, ( BVA). This Appellant submitted to the Veterans Administration a broadly worded constitutional challenge to the V.J.R.A[1]. That request for Reconsideration by the Board of Veterans Appeal was denied.

This Appellant now sets forth   a detailed  and specific Plaintiffs  challenge  to the constitutionality of the following  provisions of the VJRA, both separately and in combination:

a. Restrictions on veterans' procedural rights,   including but not limited to the fact that the VA acts as both the trier of fact and adversary at the critical regional office stage where claims are first decided;

b. The complete absence of neutral judges or trial-like procedures at the critical regional office level;

c. The veterans' inability to obtain discovery to support SCDDC claims;

d. The veterans' inability to compel the attendance of any VA employees or most other witnesses to testify at hearings and support their claims;

e. The complete absence of any procedure through which a veteran can obtain expedited relief in urgent cases such as an imminent suicide threat;

f. The absence of a class action procedure;

g. The limited role of the Court of Appeals for Veterans Claims and its inability to award injunctive or declaratory relief;

h. The absence of any judicial authority or mechanism to enforce judicial decisions or require the agency of original jurisdiction (the regional offices) to obey or comply with the rule of law;   and

i. The attorney's fee prohibition, contained in 38 U.S.C. § 5904  ( c ) (l),

---

[1] THIS BRIEF CONTAINS MULTIPLE EXCERPTS FROM THE CURRENT CASE NO. SC 07-3758 SC, U.S. DISTRICT COURT FOR NORTHERN CALIFORNIA WHICH THIS VETERAN INCORPORATES INTO AND MAKES A PART OF THIS COMPLAINT.

which provides that "a fee may not be charged, allowed, or paid for services of agents and attorneys with respect to services provided before the date on which a notice of disagreement is filed with respect to the case," and the related provision for criminal penalties, 38 U.S.C. § 5905, which subjects attorneys to criminal penalties, including imprisonment of up to one year for any violation (hereafter collectively the "Fee Prohibition"). The VJRA provisions identified in sub-paragraphs a-i are sometimes collectively referred to below as the "Statutory Defects."

## COMPLAINT FOR DECLARITORY AND INJUNCTIVE RELIEF.

24.     Plaintiff  therefore seek injunctive relief to restrain the Secretary of Veterans Affairs from continuing certain widespread practices and policies of the VA that are not and cannot be discovered or raised through the existing system of reviewing  in  this  veteran's individual claim decisions  process leading up to appeals to the Court of Appeals for Veterans Claims. Each of these VA policies and procedures is enabled and encouraged by the Statutory Defects.   Amongst these illegal policies and practices are:

a. Extremely long, ( 45 years to decide the 1963 I.U. claim which has yet to be decided), delays in  the adjudication of this veterans retro-active awards for claims for  Earlier  Effective dates for his S.C. TDIU, Epistaxis, New growth of the tumor Angiofibroma, Sinusitis, the 1982 grant of Depression,   and the issues reasonably raised prior to the 2001 BVA decision on appeal, Docket No. 00-02  166A,   but not adjudicated. Hence , the violation of  the requirements of due process;

b. The destruction, alteration and  doctoring of records in this veteran's claim files by SLC, Utah, VAMC,  the destruction of the 2004 C& P exam by the  Clarksburg, VAMC,   and the falsification of the 1997, 1998, 1999 rating decisions by the Decatur, Ga. RO  employees;

c. The premature denial of  this veteran's 1980 claim for sinusitis, epistaxis and new

10

growth of the tumor Angiofibroma, and other SCDDC claims before the required initial claim development has been completed,  the destruction of the 2004 C& P exam,   the sending of SOC to the wrong address,    again for the express purpose of enabling VA employees to manufacture work credits and "earn" additional incentive compensation; and other criminal acts in the conspiracy to delay, deny, or otherwise withhold legally earned benefits from this veteran. The pressure exertion by VA officials in Washington, DC of extra-judicial pressure and influence, which have nothing to do with the merits of this veterans  case, or upon the adjudication of  his claims by VA regional offices;

      d.     Various other illegal practices and procedures

## DUE PROCESS VIOLATION OF THE VJRA

      The Plaintiffs  right to due process have been violated in the following manner:

25.     The VARO have ,under the VJRA , the authority to act on behalf of the government and the veteran. This allows the R.O., to be both judge, prosecutor and jury without this veteran having the ability to complain in a manner allowed by non-veterans. The decision process is not fair and impartial.

26.     The VA cannot and has  not assisted this veteran in obtaining critical evidence that would support his claim.  Dr. Noran and Dr. Boggs evidence favorable to the government was used in the 1983 BVA decision but those  same reports which contained evidence  favorable to the veteran was ignored.

27.     Evidence of bleeding in the 1998 decision was ignored in violation of 38 CFR 3.303 (b) (1998).  The decision therefore reflected 38 CFR 3.103 (a) which states:  "protect the interests of the government," 38 C.F.R. § 3.103(a) ;

28.     Because the RO acts  for both the government and the veteran, trial like procedures and

law judges are absent  by which the veteran can obtain a fair and impartial decision process.

29.    This veteran does not have the right under the existing laws to call witnesses from the employees who make the decisions regarding his claims, to question them on the extent of their wrong doing or failure to follow the law, or to initiate discovery. There is no opportunity to establish factual evidence such as the  destruction of the 6-26-1980 C& P exam,  or the 2-4-2004 C& P exam,  which would  provide this veteran with  a fair and impartial determination. While the government is free to support its side with any current abusive and illegal actions, the veteran is helpless to initiate action which would discover and cure these abusive and illegal actions and cure the defect at the RO level.

30.    This veteran is not allowed to compel attendance of  VA employees to testify under oath before the veteran at a hearings.

31.    This veteran is not allowed to obtain injunctive or declaratory relief before the VA.

32.    Precedents which are set by the CVAC and the Court of Appeals for Veterans Claims or the Federal Circuit decisions are not followed by the VA as binding and therefore the claimant must contest each issue over and over again, causing delays of years. There is no class action requirements for veterans before the VA or CVAC.

33.    The VA is compelled to follow agency rulings or VA General Counsel precedents opinions or instructions of VA Secretary,  and is not compelled to follow Judicial rulings, laws, or precedent opinions at the Regional Office level or any other level.  Thus, the violation of the rule of law is flaunted in the face of the veteran.

34.    There is no mechanism for this veteran to address VA misfeasance, malfeasance, or intentional violations of the rules, laws, regulations, and precedents,  which impact directly and adversely upon this veterans rating decision, determinations and benefits.

35.    The Fee Prohibition deprives veterans of counsel at the  regional office level where the

record is developed and where the vast majority of cases are resolved.

## INTERRENCE WITH TDIU DETERMINATIONS

36.       The Department of Veterans Affairs Central Office ("Central Office") has unfairly and improperly interfered with disability determinations of this veteran by adopting unpublished policies and procedures intended to decrease the number of recipients receiving SCDDC based upon an Earlier Effective Date (E.E.D.) for TDIU, including this veteran whose claims are based on PTSD, Epistaxis, New growth of the tumor Angiofibroma and Sinusitis.

VA actions include:

(1)       The institution of "special reviews" of past grants of SCDDC based upon TDIU;

(2)       Adoption of internal rules prohibiting assistance to veterans seeking SCDDC based upon TDIU or an E.E.D. For TDIU.;

(3)       Requirement of mandatory Central Office review of TDIU and (E.E.D. ) grants by regional offices;

(4)       Implementation of compensation policies that create incentives for aberrant adjudication practices such as ignoring of evidence or the subsumation of evidence necessary for proving TDIU or an E.E.D., for TDIU in defiance of 38 CFR 3.303 (a) (2009); ( NOTE: This veterans c-file is over 7000 pages long. Does this Court really believe that the VA reviewed " all evidence in claims file"? Or did they violate 38 CFR 3.303 (a) (1999) ! Where is the review of the 9-6-1963 claim of I.U.?

37.       The VA also issued, but did not publish, rules that prohibited personnel from assisting this veteran with the development of his claims, including unpublished instructions that "individual unemployability [claims were] not to be inferred," and that personnel should send a copy of the required form for a TDIU claim to the veteran if "there is a strong likelihood that the veteran may be entitled to this benefit." But veterans did not know that the unpublished rules

imposed a heightened scrutiny on TDIU claims and claims for E.E.D., for TDIU and therefore conveyed the unmistakable message to adjudicators that granting TDIU benefits or claims for E.E.D. For TDIU was discouraged by their superiors.

38.     These rules conflicted with the then-existing statutory duty to provide veterans with complete information about all benefits to which they may be entitled, and to assist veterans with the development of all pertinent facts to their claims. *See 38 U.S.C. § 3003(a) (later changed to § 5103); 38 C.F.R. § 3.155(a). ( The end result was that in this veteran' case the VA was prepared to subsume evidence of record which supported an Earlier Effective Date for TDIU and the Social Security total disability award and the 9-6-1963 and 6 other VA Physician statements of unemployability all were ignored.*

39.     "Letter 20-05-35" (the "VBA Letter") was issued on June 14, 2005 requiring a "concurring second signature from a decision maker of equal or greater authority" for any grant of service connection for PTSD, any grant of a 100% schedule rating,  any grant of a total disability rating based on individual unemployability or an E.E.D., for TDIU.

40.     The VBA Letter was later amended to include denials of service connection for PTSD, and to limit the second category of TDIU and E.E.D. For TDIU to 100% grants of service connection for SCDDC.

41.     In the Fall of 2005, Defendant Nicholson announced a plan to institute a special review of all PTSD recipients' claims for "fraud," a plan that was aborted on November 10, 2005.

42     Within days after the cancellation of the global review of PTSD claims, the VA secretly made arrangements with the Institute of Medicine to inter alia, review and

attempt to narrow the criteria used by the VA to determine the severity levels and compensation rates for PTSD.

43      The Adverse and Unfair Impacts of the VA's Incentive Compensation Program Upon the Adjudication of Claims

44.     For many decades, the VA has employed a compensation system that ties incentive payments for employees to a system of credits for work performed. Work credits are assigned to a wide variety of tasks such as preparing a rating decision, and the VA financially rewards adjudicators who process tasks more quickly. The statutory basis for the VA's  program is 5 U.S.C. § 3131, which establishes a Senior Executive Service to "provide for a compensation system, including salaries, benefits, and incentives, and for other conditions of employment, designed to attract and retain highly competent senior executives." 5 U.S.C. § 3131(1).

45      As the VA has known for many years, the VA's compensation system has allowed its employees to commit fraud and "game" the system. VA employees have developed and perfected a number of administrative schemes designed to exploit the system of incentive compensation and artificially enhance their productivity statistics. One of the most common abuses is to prematurely issue a denial decision before the required factual development for a claim is initiated or completed;  a second work credit can be garnered if the claim is reopened by the veteran,  or if an appeal results in a remand for further development.

46      Other abuses include the removal of medical examination reports from claims files, obstruction of the1980 and  2004 C& P exam,   the falsification of the 8-26-1980 rating decision, physical alteration of claim files,  doctoring of transcripts, ( see the 6-10-1980 C& P exam of Dr. Finlay),  and a wide assortment of other improper actions.

47 Premature denial of claims puts the onus on the claimant to perfect a timely appeal. The vast majority of claimants give up after an initial denial. If a claimant succeeds in

perfecting an appeal, these appeals are often remanded after a lengthy delay for the necessary development to occur. After remand, the adjudicator reprocessing the claim receives another work credit, contributing to the recycling and churning problem described above.

48.     The fraudulent and wrongful use of the VA's work credit system at the expense of veterans has become serious and widespread. It now permeates almost every aspect of the adjudication of SCDDC claims, including the regional office and BVA levels; yet, the VA has done little or nothing to stop it.

49.     For example, one BVA attorney pled guilty to removing documents from veteran case files in order to delay or preclude decisions on the merits of benefit applications. See United States v. Gottfried, 58 F. 3d 648, 650-51 (D.C. Cir. 1995) (an investigation by the Inspector General indicated that the advisor, Lawrence Gottfried, destroyed portions of at least thirty-two case files out of thirty-eight files assigned to him over a three-month period. The criminal investigation revealed that this conduct continued over four years, possibly affecting the claims of over 1,000 veterans).

50.     BVA attorney Jill Rygwalski also pled guilty to similar tampering with veteran case files, potentially affecting 1,100 veterans. Ms. Rygwalski, who processed medical and benefit claims for veterans, was convicted of forging documents and destroying medical records in veteran claim files. Approximately seventy-seven of these veterans died after Ms. Rygwalski returned their cases to local veterans' offices for further action necessitated by her own unlawful conduct, resulting in large forfeitures of accrued benefits. (Toni Locy, Lawyer Gets 15 Months for Tampering with Vets' Files, The Washington Post, Sept. 9, 1995 at A14.)

51,     Notwithstanding these incidents, the destruction, alteration, and forgery of veterans' records and claim files and other illegal practices continue today. The 2005 VA IG Report lists comments from VA staff such as: "For the past 10 years no examination has been

allowed to be returned as inadequate because the regional office concocted a deal with the hospital to cook the books on examination quality. . . . Rating specialists and DRO's [Decision Review Officers] have been pressured to make rating decisions unwarranted by the evidence to make 'problem cases' go away…..'' ( This veterans case is a prime example) See **Veterans Affairs Office of Inspector General, Review of State Variances in VA Disability Compensation Payments, Report 05-00765-137 (May 2005) at 62.) (emphasis added).**

52.     By their very nature, the destruction, alteration, and forgery of veterans' claim files and other practices described above are difficult or impossible to detect or prove absent discovery, the ability to call VA employees as witnesses, and the ability to subpoena VA documents, highlighting the significance of the Statutory Defects.

**CASE OR CONTROVERSY:**

53.     A Declaratory judgment may be sought whenever an actual case or controversy arises within the court's jurisdiction. The test is whether an actual controversy exists. In this veterans case, this veterans claim of T.D.I.U., has continued un-adjudicated for 46 years. Even though this veteran has filed 7000 pages of complaints, motions, and arguments, as late a 2008, the VA has refused to make a determination of an E.E.D. For T.D.I.U based upon all of the evidence as required by Title 38 U.S.C. 1110 (2008), 38 C.F.R. 3.303 (a) (2008).

54.     In this veterans case, a declaratory judgment and an injunctive remedy is proper because this veteran can show and has shown a reasonable expectation that previous injury and injury that will continue in the future will go on unabated.


**FIRST CLAIM FOR RELIEF:  Failure to provide due processs.**

55     This Plaintiff argues that the VJRA,  and the unlawful use of Title 38  C.F.R.,

17

unconstitutionally infringe upon his protected property interests, veterans benefits ,and rights protected by the Due Process Clause of the Fifth Amendment to the United States Constitution, which states: "No person shall . . . be deprived of life, liberty, or property, without due process of law."

56     That the provisions of the VJRA, and the unlawful use of Title 38 laws, and other violation of veterans laws are unconstitutional because they deprive this veteran of his rights under law to a fair and impartial hearing on his protected property interest , service connected veterans benefits , by failing to provide Plaintiff with the due process required by the Fifth Amendment of the Constitution in all rating decision and after 1975, Strict Scrutiny review.


**SECOND CLAIM FOR RELIEF: Violation of Section 504 of the Rehabilitation Act) ,**

57     Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C.§ 794, provides that:

> [N]o otherwise qualified individual with handicaps in the United States . . . shall, solely by reason of his or her handicap, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . .

Plaintiff is a "qualified individuals with handicaps" within the meaning of 29 U.S.C. §§ 706(8) and 794. The VA receives federal financial assistance within the meaning of 29 U.S.C. § 794. This Plaintiff is being discriminated against in Violation of Section 504 of the Rehabilitation Act) .

58.     The VA's policies, procedures and practices have prevented this veteran from participation in and has resulted in the denial of lawfully earned service connected veterans benefits of an Earlier Effective Date for Total Disability Individual Unemployability.

**THIRD CLAIM FOR RELIEF; Partial Summary Judgment.**

59.     That the honorable court  grant an order directing  the VA to award past-due benefits of a 100 % rating for an E.E.D. for TDIU, retro-active to 1963, the date of the un-adjudicated 9-6-1963 claim of I.U., and diagnosis of I.U. , as allowed under 38 CFR 3.157 (a) (2008).

60.     Or in the first alternative, that the VA  honor Depression as a separate disability from P.T.S.D., and award its inception retro-active to 1982, the original date of the claim.

**FOURTH CLAIM FOR RELIEF; Preliminary Injunction and Declaratory Relief**

61.     That this honorable Court grant preliminary injunction and declaratory relief to prevent further harm from the  prolonged delays and illegal procedures which have caused  due process violations of law  preventing this veteran from obtaining a fair and impartial rating decision of his 9-6-1963 claim of I.U.,  and an Earlier Effective date for TDIU retro-active to 1963.

62.     Or in the third alternative, that the veteran  be granted a  Jury Trial.

63.     For such other relief as the Court may deem necessary.

**WHEREFORE,  the Plaintiff prays the honorable Court will  grant  each of the claims for relief as stated above.**

         I, David C. Corson, do hereby certify, that the forgoing is true and correct to the best of my knowledge.

~~David  C.Corson~~

   C-21-868-828

         I, David C. Corson, do hereby certify that on the  _30_  day of _MARCH_  ,

2009, I sent postage prepaid, a copy of this Complaint to the Attorney General ,

(027), for Veterans Affairs, at the below listed address.

Richard Schneider

Appellate Counsel
Office of the Attorney General (027 D)
U.S. Department of Veterans Affairs
810 Vermont Ave.
Washington, D.C. 20402

## LAWS AND PRECEDENTS

42 U.S.C. 1985 (3)...........................................................................................1,2,4,

5TH AMENDMENT........................................................................................1,3,5

14TH AMENDMENT.......................................................................................1,3,5

28 U.S.C. 1331................................................................................................2.

28 U.S.C. 241.................................................................................................2.

38 C.F.R. 3.957...............................................................................................5,

38 C.F.R.3.105 (d)...........................................................................................5,

38 C.F.R. 3.103 (a)..........................................................................................9,11

38 CFR 3.104..................................................................................................1,

38 U.S.C. 1155................................................................................................67

38 C.F.R.  3.303 (a) ........................................................5,6,7,8,11,13,15,17

38 C.F.R. 3.303 (b).........................................................................................9,11

U.S.C. 7104....................................................................................................6,

38 U.S.C. 4004...............................................................................................6,

38 U.S.C. 5904...............................................................................................9,

38 U.S.C. 5905...............................................................................................10,

38 C.F.R. 3.155 (a).........................................................................................13

5 U.S.C.  3131 (1)...........................................................................................15

38 U.S.C. 1110...............................................................................................5,,17

29 U.S.C. 794.................................................................................................18,

29 U.S.C. 706 (8)............................................................................................18

38 C.F.R. 3.157 (a).........................................................................................19

38 CFR 20.1409 ( c )......................................................................................6.

38 U.S.C. 3003 (a) ......................................................................................................**14**

Section 504 of the Rehabilitation Act of 1973...............................................**5,18**

**VETERANS JUDICIAL REVIEW ACT (VJRA)**............................................**6,**

*Alemany  v. Brown, 9 Vet. App. 518 (1996);*...................................................**8**

*Bowen v. City of New York, 476 U.S. 467 ((1986)*.........................................**2**

*Broudy  v. Mather, 460 F.3d 106 (D.C. Cir. 2006);*........................................**2**

*Conley v. Gibson, 355 U.S. 41, 45-46 (1957);*.................................................**3**

Devine v. Cleland, 616 F.2d 1080 ( 9th Cir.1980), .........................................**4**

*Disabled Am. Veterans v. United States Dep't of Veterans Affairs,*

        962 F.2d 136, 140-41 (2d Cir. 1992) ...................................................**2**

Haines v. Kemer, 925 Ct 594; ........................................................................**2**

In Re: Hall v. Bellmon 935 F. 2d 1106 ( 10th Cir. 1991); .............................**2**

*Johnson v. Robison,  415 U.S. 361, 373 (1974)* .............................................**2**

*Link v. West. No. 97-495*..................................................................................**1**

*Mathews v. Eldridge, 424 U.S. 319, 333 (1997);)* .........................................**3**

 Moody v. Prinicipi, 360 F.3d 1306 ( Fed Cir. 2004);.....................................**2**

*Neitze v. Williams 109 S. Ct. 1827, 1832 (1989);*...........................................**3**

*Plato v. Roudebush, 397 F. Supp.12195 (D. Md. 1975),*..............................**4**

Power 914 F 2d 1459 ( 1 Cir 1990);.................................................................**2**

*Rosler v. Derwinski, 1 Vet. App. 241, 249 (1991);*.........................................**3**

Szemraj v. Principi, 357 F. 3d 1370 ( Fed. Cir. 2004); ..................................**2**

United States v. Gottfried...............................................................................**16**

Veterans Affairs Office of Inspector General, Review of State

**Variances in VA Disability Compensation Payments,**

**eport 05-00765-137 (May 2005) at 62.)** .............................................................17