# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**DAVID C. CORSON,**

      **Plaintiff,**

***vs*.**                    **CIVIL ACTION NO. 1:09CV49**

**SECRETARY OF VETERANS AFFAIRS,**

      **Defendant.**

## REPORT AND RECOMMENDATION/OPINION

On the 9th day of April, 2009, Plaintiff, David C. Corson ("Corson"), proceeding *pro se*, filed his Complaint in this Court against Defendant, Secretary of Veterans Affairs ("VA") [DE 1], along with a Memorandum of Points and Authorities for Injunctive Relief, Specific Performance Relief, Declaritory [sic] Relief or Motion for Jury Trial [DE 2] and Memorandum of Points and Authorities in Support of Appellants Motion for Summary Judgment [DE 3]. In his Introduction and Cause of Action in his Amended Complaint Corson claims:

1.    Comes now David C. Corson, Pro Se Plaintiff, and states that he is a 100% Disabled American veteran with PTSD and files this Complaint with this honorable Court.

2.    This case stems from the failure of the Veterans Administration to honor its commitment to this veteran. The Veterans Administration has violated this Plaintiffs rights under 42 U.S.C. 1985(a)(2009), the Veterans Judicial Review Act, other Title 38 laws, and the 5th Amendment.

3.    This is an action on behalf of this veteran to challenge the constitutionality of the rating Decision process of the Veterans Administration for its multiple due process failures in those proceedings and its failure to provide Strict Scrutiny review of a protected property interest, veteran's benefits, after the 1975 and 1980 precedent opinions making Veterans' benefits a protected property interest under the 5th and 14th Amendments.

4.    This is an action on behalf of this veteran to challenge the constitutionality of provisions in the Veterans Judicial Review Act of 1988, in conjunction with related, pre-existing statues and a pattern of illegal policies and practices of the Department of Veterans Affairs.

4.      That this veteran has been denied veterans benefits to which he is entitled as a result of the Veterans Administration carefully and premeditated conspiracy to delay, deny or in violation of the law, withhold lawfully earned benefits.

In his Claims for Relief, Corson claims as follows:

1.      This Plaintiff argues that the VJRA, and the unlawful use of Title 38 C.F.R., unconstitutionally infringe upon his protected property interests, veterans benefits and rights protected by the Due Process Clause of the Fifth Amendment to the United States Constitution, which states: " No person shall be deprived of life, liberty, or property, without due process of law."

That the provisions of the VJRA, and the unlawful use of Title 38 laws, and other violation of veterans laws are unconstitutional because they deprive this veteran of his rights under law to a fair and impartial hearing on his protected property interest, service connected veterans benefits, by failing to provide Plaintiff with the due process required by the Fifth Amendment to the United States Constitution.

2.      Section 504 of the Rehabilitation Act of 1973 ("Section 504)"), 29 U.S.C. section 794, provides that:

> No otherwise qualified individual with handicaps in the United States . . . shall, solely by reason of his or her handicap, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

Plaintiff is a "qualified individuals [sic] with handicaps" within the meaning of 29 U.S.C. sections 706(8) and 794. The VA receives federal financial assistance within the meaning of 29 U.S.C. section 794. This Plaintiff being discriminated against in Violation of Section 504 of the Rehabilitation Act.

The VA's policies, procedures and practices have prevented this veteran from participation in and has resulted in the denial of lawfully earned service connected veterans benefits of an Earlier Effective Date ["EED"]for Total Disability Individual Unemployability ["TDIU"].

3.      That the honorable Court grant an order directing the VA to award past-due benefits of a 100% rating for E.E.D. for T.D.I.U. retro-active to 1963, the date of the un-adjudicated 9-6-1963 claim of I.U., and diagnosis of I.U., as allowed under 38 CFR 3.157(a)(2008).

That the VA honor Depression as a separate disability from P.T.S.D. and award its inception retro-active to 1982, the original date of the claim.

4.      That this honorable Court grant preliminary injunction and declaratory relief to prevent

further harm from the prolonged delays and illegal procedures which have caused due process violations of law preventing this veteran from obtaining a fair and impartial rating decision of his 9-6-1963 claim of I.U., and an Earlier Effective Date for TDIU retro-active to 1963.

That the honorable Court direct the VA to provide Strict Scrutiny in all of his appeals from VA decisions of Service connected disabilities which have either been denied an increase or which have been severed, in view of the fact that Veterans Benefits were made a Protected Property interest in Plato v. Roudebush, 397 F. Supp. 12195 (D. Md. 1975), and Devine v. Cleland, 616 F.2d 1080 (9th Cir. 108).

[5]     Or in the alternative, that the veteran be granted a Jury Trial.

On July 27, 2009, the VA filed a Motion to Dismiss and Memorandum in Support [DE 17, 18], arguing in particular that this Court lacked subject- matter jurisdiction because judicial review of individual VA benefits decisions must be brought in the United States Court of Appeals for Veterans Claims ("CAVC"), the United States Court of Appeals for the Federal Circuit, and the United States Supreme Court.

On August 26, 2009, Corson filed his "Answering Brief to Defendants [sic] Motion to Dismiss, with Memorandum of Points and Authorities" and "Declaration of David C. Corson," and "Motion to Seal Records and for a Closed Jury Trial" [DE 21]. In his Motion to Seal, Corson moves the Court "that after a determination that Plaintiff qualifies as a person who is handicapped under Section 504 or the Rehabilitation Act of 1973, the honorable Court seal the records of the proceedings before the Court from Public disclosure [and] [t]hat a Jury Trial in this case be closed to the Public."

On October 26, 2009, Corson filed a "Motion for Preliminary Injunctive Relief," "Motion to Strike," "Motion to Stay," and "Motion for TRO" [DE 26].

On November 3, 2009, Corson filed a "Motion for Correction of Errors and Motion for First

[sic] Amendment of Pleadings," which was granted by the Court. The Amended Complaint was filed on November 6, 2009 [DE 33].

This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. section 636(b)(1)(B), and these Motions are fully briefed and now ripe for the Court's consideration.

## Motion to Dismiss

The undersigned United States Magistrate Judge first addresses the VA's Motion to Dismiss, as a resolution of this Motion also resolves the issues to be decided.

## I. Factual Background

The undersigned finds the following facts to be relevant in this matter solely to provide background to the case before the Court.[1] Corson is eligible for VA benefits based on honorable service in the United States Navy from October 2, 1957 to December 8, 1961. He currently receives VA disability compensation for service-connected conditions. He has pursued numerous VA benefits claims since the 1960's. He was employed by the VA for a period in the early 1980's.

In 1959, while in the service, Corson had surgery to remove a nasalpharyngeal angiofibroma.[2] In December 1961, he was discharged from naval service by reason of a physical

---

[1]Corson disputes many of the facts as stated by the VA, but the undersigned finds his disputes mostly consist of argument, not fact. For example, Corson states as a fact that "[t]here is the withholding of a fair and impartial hearing in the 1962 hearing decision. The VA due process failure was the refusal to rate New Growth and Epistaxis separately . . . . The decision cost the veteran an 100% rating for New Growth as required by 38 U.S.C. 1155 . . . ." and "[t]here are multiple errors of law and fact in the 12-13-1963 hearing decision . . . ." As stated, the undersigned includes the statement of fact solely to provide a background for the present complaint.

[2]A benign tumor of the nasopharynx composed of fibrous connective tissue with abundant endothelium-lined vascular spaces, usually occurring during puberty in boys. Nasal obstruction

disability connected with the recurrent angiofibroma. He applied for VA benefits in 1961, and was awarded service-connected disability compensation of recurrent angiofibroma of the nasopharynx and assigned a 10% disability rating for that condition. The VA determined at that time that a separate disability, rhinitis, was not service-connected.

Corson filed claims for an increased rating in March 1963 and July 1963, claiming his service-connected disability (angiofibroma) had increased to a degree that it greatly handicapped him in any type of activity, particularly in obtaining employment. The VA did not increase his rating above the 10% already awarded. In February 1964, the VA did increase Corson's rating to 30% after receiving evidence of increased disability. His rating remained 30% until 1980.

In May 1980, Corson requested reopening of his claim and submitted additional evidence in support of his claim for an increase in his service connected disability rating. The VA denied the claim for service connected rhinitis, sinusitis, and migraines, and actually reduced his service connected angiofibroma disability rating to 0%, finding the evidence was inadequate to show this service connected disability was 30%.

In August 1980, Corson filed an EEO complaint against the VA Medical Center in Salt Lake City, Utah, where he worked as a registered nurse. The complaint alleged discrimination based on handicap. The claim was assigned to an EEO investigator. It appears (although the Court has no actual proof) that the parties reached a settlement by which Mr. Corson agreed to forego legal action under the Civil Rights Act of 1964 in exchange for concessions related to various aspects of his continued employment. The undersigned notes the VA states its only copy of this purported

---

may become total, with hyponasality, discomfort in swallowing, auditory tube obstruction, and massive epistaxis (hemorrhage from the nose; called also nosebleed and nasal hemorrhage). DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, 85, 524 (31st Ed. 2007).

settlement agreement is not signed by the VA representative.

In September 1980, Corson requested the VA reopen his May 1980 claim for re-rating of up to 80% for "sinusitis, vascular pain and headaches due to the tumor and surgery and neurological damage secondary to primary surgery." The VA, in a 1981 decision, restored the 30% rating for service-connected angiofibroma but denied a requested rating based on TDIU ("Total Disability due to Individual Unemployability")[3] The VA reiterated this decision in a January 1982 decision. Four days later, Corson submitted a claim for service-connected disability for neurosis and organic brain syndrome and again for a TDIU rating. These claims were denied by the VA Regional Office and Corson appealed to the Board of Veterans' Appeals ("BVA"). In April 1983, the BVA denied the claims.

In March 1984, Corson filed a claim for increased rating for his service-connected angiofibroma, which was denied by the Regional Office in February 1995. In January 1995, Corson filed an application for increased compensation based on unemployability. The Regional Office deferred action on the TDIU claim as well as for service connection of rhinitis and sinusitis, pending a VA examination. In April 1995, Corson filed a Notice of Disagreement ("NOD") addressing prior denials of his various claims. In June 1995, the Regional Office issued a decision finding the NOD invalid, stating as its reason that all the claims had been addressed and denied and upheld by the BVA and no new evidence was presented.

In April 1998, the Regional Office granted Corson service connection for nosebleeds, sinusitis, and rhinitis effective January 1995, with a 30% disability rating. The Office continued to defer the TDIU claim and deferred additional claims regarding left lung lobectomy pending

---

[3]The VA avers that the disability must be rated at at least 80% to obtain TDIU rating.

additional development. At that time Corson held a combined disability rating of 50%.

In August 1995, the VA Huntington Regional Office found clear and unmistakable error in the April 23, 1998 decision and assigned an earlier effective date of March 1994 for the 30% rating for nosebleeds, sinusitis, and rhinitis.

In April 1999, Corson requested service connection for a psychiatric disability. In November 1999, the Regional Office granted service connection for PTSD, rated as 50% disabling effective April 1997. This raised Corson's service-connected disabilities to a combined 80%, the amount necessary to be declared TDIU. Corson appealed this decision to the BVA in February 2000, seeking earlier effective dates for his ratings, including the TDIU rating. In October 2001, the BVA granted an earlier effective date of May 30, 1997, for his PTSD rating, but rejected Corson's claim that there was a clear an unmistakable error in the 1983 decision. The claim was remanded to the Regional Office to consider Corson's claims for earlier effective dates for TDIU and for nosebleeds, sinusitis, and rhinitis.

In April 2003, Corson submitted a claim to the Regional Office for an increase for his service connected PTSD, angiofibroma, nosebleeds, sinusitis, and rhinitis. He also requested service connection for various other conditions. Following a VA examination in March 2004, the Regional Office denied his claims. In 2005, Corson filed a petition for extraordinary relief to the U.S. Court of Appeals for Veterans Claims ("CAVC"). The CAVC denied the petition in June 2005. Corson filed a subsequent action in the CAVC. In May 2006, the CAVC found it had no jurisdiction to hear the eleven causes of action including civil and criminal conspiracy against civil rights, retaliation under Title VII, and violations of the Fifth and Fourteenth Amendments. The CAVC stated that "Mr. Corson's complaint under title 42 is a civil matter that may be pursued in the U.S. District

Court, and his assertions under Title 18 are criminal matters within the purview of the U.S. Attorney Generals' Office." The Regional Office at the same time issued a decision finding no revisions warranted in Corson's ratings.

In May 2007, the Regional Office issued a rating decision granting Corson an earlier effective date of May 30, 1997, for his TDIU rating, but denying TDIU for a date earlier than May 30, 1997. In June 2008, Corson appealed the May 2007 Regional Office decision to the BVA. The BVA remanded the claim to the Regional Office to accommodate Corson's request for a personal hearing. In a separate decision, the BVA dismissed with prejudice Corson's claim of clear and unmistakable error in the October 2001 decision. Corson filed an appeal with the CAVC from the BVA's June 2008 decision. At the time of the Complaint, this appeal remained pending before the CAVC. He has also filed a motion with the BVA for reconsideration of the June 2008 BVA decision. At the time of the Complaint, the BVA had not acted on that motion because of Corson's notice of appeal which transferred jurisdiction to the CAVC.[4]

## II. Discussion

The VA argues that the Doctrine of Sovereign Immunity bars Corson's claims, and even if it did not, the relevant statutory scheme precludes review by this Court. Further, the VA argues that this Court does not have jurisdiction over any facial challenges made by Corson to the VJRA or VA regulations. Under Fed.R.Civ.P.12(b)(1), Corson therefore bears the burden of showing that federal

---

[4]Since the filing of the Complaint in this case, the Regional Office entered a decision on the remanded claim. The decision of the Regional Office was that "a review of the cited evidence has been done and it does not warrant a change in the previous decision." This is the decision Corson moves this Court to strike in its entirety in his Motion to Strike. This is also the basis of Corson's Motions for Temporary Restraining Order ("TRO"); Preliminary Injunction, and Stay against the VA, all of which request this Court enjoin the VA and BVA from an further actions or proceedings until the instant case is resolved.

jurisdiction is appropriate.  <u>McNutt v. General Motors Acceptance Corp.</u>, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); <u>Adams v. Bain</u>, 697 F.2d 1213, 1219 (4th Cir. 1983); <u>United Phosphorous, Ltd. v. Angus Chem. Co.</u>, 322 F.3d 942, 946 (7th Cir. 2003).

It is fundamental under the doctrine of sovereign immunity that the United States cannot be sued without its consent.  <u>United States v. Testan</u>, 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); <u>United States v. Sherwood</u>, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941); <u>Skwira v. United States</u>, 344 F.3d 64, 72 (1st Cir. 2003); <u>Richards v. United States</u>, 176 F.3d 652, 654 (3d Cir. 1999); <u>Beamon v. Brown</u>, 125 F.3d 965, 967 (6th Cir. 1997).  Sovereign immunity protects the United States from liability and also deprives a court of subject matter jurisdiction over claims against the United States.  <u>Richards</u>, 176 F.3d at 654.  Any government waiver of sovereign immunity must be unequivocal, <u>see</u> <u>e.g.</u>, <u>Franconia Assocs. v. United States</u>, 536 U.S. 129, 141, 122 S.Ct. 1993, 153 L.Ed. 2d 132 (2002); and <u>United States v. Mitchell</u>, 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980), and such waivers are strictly construed.  <u>Lane v. Pena</u>, 518 U.S. 187, 192, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996); <u>United States v. Williams</u>, 514 U.S. 527, 531, 115 S.Ct. 1611, 131 L.Ed.2d 608 (1995).  "[T]he party who sues the United States bears the burden of pointing to . . . an unequivocal waiver of immunity.'" <u>Williams v. United States</u>, 50 F.3d 299, 3040 (4th Cir. 1995) (internal citations omitted; <u>see also</u> <u>Phoenix Renovation Corp. v. Rodriguez</u>, 403 F. Supp.2d 510, 513 (E.D.Va. 2005).

Here Corson has sued the "Secretary of Veterans Affairs."  Sovereign immunity cannot be avoided, however,  by suing individual federal departments, such as the VA.  <u>See</u>, <u>e.g.</u>, <u>Shelton v. United States Customs Serv.</u>, 565 F.2d 1140, 1141 (9th Cir. 1977)(<u>per</u> <u>curiam</u>).  Further, "[i]n deciding whether an action is in reality one against the government, the identity of the named parties

defendant is not controlling." Stafford v. Briggs, 444 U.S. 527, 542 n. 10, 100 S.Ct. 774, 63 L.Ed.2d 1 (1980). Although an action may be nominally brought against a Federal agency or official, it is considered as brought against the sovereign, where, as here, the judgment sought would expend itself on the public treasury or domain, interfere with the public administration, or restrain the Government from action or compel it to act. Dugan v. Rank, 372 U.S. 609, 620, 83 S.Ct. 999, 10 L.Ed. 2d 15 (1963); Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 687-88, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949); Portsmouth Redevelopment and Housing Authority v. Pierce, 706 F.2d 471, 473 (4th Cir. 1983); Muirhead v. Mecham, 427 F.3d 14, 18 (1st Cir. 2005). The United States has not waived its sovereign immunity as to review of Department of Veterans Affairs decisions by any court except for the United States Court of Appeals for Veterans Claims ("CAVC"), the United States Court of Appeals for the Federal Circuit, and the United States Supreme Court. Veterans' Judicial Review Action ("VJRA"), Pub. L. No. 100-687, Civ. A, section 101, 102 Stat. 4105 (1988); In re Russell, 155 F.3d 1012, 1013 (8th Cir. 1998).

Additionally, District Court review of VA benefits determinations is precluded by 38 U.S.C. section 511 and its predecessors. Section 511, as amended by the VJRA and the Department of Veterans Affairs Codification Act, Pub. L. No. 1-2-83, section 2(a), 105 Stat. 378, 388 (1991), provides in pertinent part:

> The Secretary shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans. Subject to subsection (b), the decision of the Secretary as to any question shall be final and conclusive and may not be reviewed by any other official or by any court, whether by an action in the nature of mandamus or otherwise.

The Supreme Court has recognized Congress' purpose in enacting Section 511. In Johnson v.

Robison, 415 U.S. 361, 369-73, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974), the Court stated that that purpose was, first, to ensure that veterans' benefit claims would not burden the courts and VA with expensive and time-consuming litigation, and second, to ensure that the technical and complex determinations and applications of VA policy regarding such claims would be adequately and uniformly made. Accord Tietjen v. United States Veterans Admin., 884 F.2d 514 (9th Cir. 1989); DeRodulfa v. United States, 461 F.2d 1240 (D.C.Cir. 1972); and Milliken v. Gleason, 332 F.2d 122 (1st Cir. 1964).

The VJRA does provide a limited waiver of sovereign immunity for lawsuits seeking review of VA benefit decisions. Subject to certain stated limitations, however, the VJRA vests exclusive jurisdiction in the CAVC to review such decisions. See 38 U.S.C. 7252. Pursuant to 511(a), the Secretary of Veterans Affairs is responsible for deciding all questions concerning the provision of benefits to veterans, their dependents, or their survivors. An appeal from the Secretary's decision concerning benefits lies with the Board of Veterans' Appeals ("BVA"). 38 U.S.C. section 7104(a); 38 C.F.R. section 20.10(a). The BVA decision may be appealed by the claimant to the CAVC, pursuant to 38 U.S.C. section 7252(a), and then, under certain circumstances, to the United States Court of Appeals for the Federal Circuit, pursuant to 38 U.S.C. sections 7252(c), 7292.[5]

As previously held by various courts, section 511 does not strip district courts of the ability to hear facial constitutional challenges to the VA benefits system. See Larrabee by Jones v. Derwinski, 968 F.2d 1497, 1501 (2d Cir. 1992)("district courts continue to have jurisdiction to hear facial challenges of legislation affecting veterans' benefits"). In that case the Second Circuit

---

[5] Corson has not appealed the latest BVA decision to the CAVC or the District Court for the Federal Circuit. In fact, as earlier stated, Corson has actually moved this Court to stay any further action by the VA as regards the latest BVA decision.

discussed the effect of the VJRA in providing for judicial review of veterans' benefits decisions in the CAVC and, on appeal, in the United States Court of Appeals for the Federal Circuit, while at the same time broadening the statutory prohibition on judicial review in other courts, as follows:

> By providing judicial review in the Federal Circuit, Congress intended to obviate the Supreme Court's reluctance to construe the statute as barring judicial review of substantial statutory and constitutional claims, while maintaining uniformity by establishing an exclusive mechanism for appellate review of decisions of the Secretary.

Id. (citations omitted).  The Second Circuit then held:

> Although district courts continue to have "jurisdiction to hear facial challenges of legislation affecting veterans' benefits," other constitutional and statutory claims must be pursued within the appellate mill Congress established in the VJRA.

Id.  (citation omitted); see also Broudy v. Mather, 460 F.3d 106 (D.C.Cir. 2006)("district courts have jurisdiction to consider questions arising under laws that affect the provision of benefits as long as the Secretary has not actually decided them in the course of a benefits proceeding.");

Telecommunication Research & Action Ctr., v. FCC, 750 F.2d 70, 77 (D.C.Cir. 1984)("a statute which vests jurisdiction in a particular court cuts off original jurisdiction in other courts in all cases covered by that statute").  Thus, review of individual benefits decisions is clearly precluded by section 511.  Facial constitutional challenges to actual legislation, however, are not, "as long as the Secretary has not actually decided them in the course of a benefits proceeding.".

Corson argues that the VA, in its own Motion to Dismiss, "readily admits that Plaintiffs [sic] complaint encompasses '(1) a ruling that the provisions of the Veterans' Judicial Review Act ("VJRA") are unconstitutional;' thus, Defendant has established Subject Matter Jurisdiction for this Honorable Court by defendants [sic] own admission."  Corson also alleges, as constitutional challenges, violations of the Rehabilitation Act  and his Due Process rights under the Fifth and

Fourteenth Amendments.

In Sugrue v. Derwinski, 26 F.3d 8, 11 (2d Cir. 1994), the Second Circuit held that district courts do not acquire jurisdiction over challenges to VA benefit determinations merely because the challenges are "cloaked in constitutional terms." In that case, the Court went on to state that neither the Privacy Act, nor the Freedom of Information Act, may be used as "a rhetorical cover to attack VA benefits determinations." Id. In other words, where a plaintiff does not challenge the constitutional validity of any statute, but only raises claims arising out of the adjudication of a benefit matter, such claims may only be pursued through the CAVC. See Zuspann v. Brown, 60 F.3d 1156, 1158-1160 (5th Cir. 1995); Sugrue, 26 F.3d at 11; Hicks v. Veterans Admin., 961 F.2d 1367, 1370 (8th Cir. 1992); Menendez v. United States, 67 F. Supp. 2d 42, 47 (D.P.R. 1999)(benefit claims can only be reviewed through the mechanism established in the VJRA); State of New York v. Eadarso, 946 F.Supp. 240, 244 (E.D.N.Y. 1996)(constitutional claim against statute, "as applied," no facial challenge); and Beamon, 125 F.3d at 972-974.

Accordingly, under 38 U.S.C. section 511(a), constitutional challenges to VA regulations and procedures must be filed with the CAVC under 38 U.S.C. section 7252 or, in the case of direct review of regulations pursuant to 28 U.S.C. section 502, with the United States Court of Appeals for the Federal Circuit.

Here, Corson also argues that he challenges the constitutionality of the VJRA itself, as well as bringing other constitutional claims. The district courts, however, are vigilant in thwarting attempts by plaintiffs to hide their true causes of action to avoid the prohibitions of Section 511. In Weaver, 98 F.3d at 520, the Tenth Circuit stated that it would examine the substance of allegations relating to a denial of veterans' benefits, rather than their labels, to determine their true nature. The

court then dismissed allegations of conspiracy, fraud, and misrepresentation by VA officials involved in the claim adjudication process, concluding that they were, "in substance, nothing more than a challenge to the underlying benefits decision." Id. In Hicks v. Small, 69 F.3d 967, 970 (9th Cir. 1995), the Ninth Circuit affirmed the district court's dismissal for lack of subject-matter jurisdiction of a plaintiff's tort claims under state law for outrage or intentional infliction of emotional distress. The Ninth Circuit agreed with the district court in that case that the Plaintiff's tort claims were specifically precluded by 38 U.S.C. section 511(a) because they would have necessitated consideration of issues of law and fact involving the decision to reduce the plaintiff's benefits. 69 F.3d at 970. See also Judkins, 415 F.Supp. 2d at 616-617 (granting motion to dismiss for lack of subject matter jurisdiction over a veteran's claim challenging the VA's determination of his benefits where plaintiff sought damages of $1 billion dollars for constitutional violations, negligence, punitive damages, and consequential damages, arising out of a decision on his benefits by the VA); and Murrhee v. Principi, 364 F. Supp. 2d 782, 787 (C.D. Ill. 2005) ("a Plaintiff cannot avoid Section 4511(a) by disguising his benefits claim in constitutional clothing.").

As the Tenth Circuit did in Weaver, the undersigned will "examine the substance of [Corson's] allegations . . . , rather than their labels, to determine their true nature." In his Amended Complaint, Corson himself states:

> 11.  At the heart of this matter is this veteran's claim for a service connected disability which has either been denied a rating increase or a service connected disability which has been terminated or in an already service connected disability in which a require for TDIU or EED for TDIU has been submitted by the VA Physician in a C&P exam, but the claim for increase or TDIU or Earlier Effective Date for TDIU determination

has never been addressed, discussed, evaluated, adjudicated, or rated in any rating

decision . . . .

13.     This veteran challenges the BVA rating decisions of 1980, 1983, 2001, and 2008, on

the grounds of procedural violations of Adjudicative and Jurisdictional errors of law

. . . .

14.     Further, the veteran also challenges the illegal severance in the 1980 rating decision

on the bases of violations of a protected property interest, a service connected

disability . . . .

15.     This challenge is that of Due Process in rating decisions from 1962 through 2008 .

. . .

16.     This challenge is to the Earlier Effective Date for TDIU decisions of 2008 . . . .

17.     This veteran argues that the laws extant at the time of each decision . . . were not

followed and that the facts in evidence were intentionally ignored . . . .

18.     This challenge is to the 2008 BVA Decision . . . .

(Emphasis added).

Further, in his "Answering Brief to Defendants Motion to Dismiss" Corson disputes the

VA's Statement of the Facts by submitting "a copy of the Record before the Agency . . . . in which

36 violations of Constitutional law, 5th and 14th Amendments, due process are noted and that show

Plaintiff's contention of violations of title VII, Section 504, and other title 42 and 38 U.S.C. laws."

The undersigned finds, without examining the actual documents submitted as "facts" by Corson, that

each and every record he submitted is in reference to his own individual claim or claims for benefits

from the VA. The first page appears to be an application for VA benefits; the next 16 are his own

medical records. Corson therefore disputes the VA's facts by referring to his own claims and medical records.

Corson further states in his Answering Brief: "Therefore, Plaintiff disputes the facts as stated by defendants. Plaintiff submits that these violations of Constitutional law have led to the loss of legal compensation of veterans benefits from 1963 and 1980 to present;" "The injury to Plaintiff is the loss of veterans' benefits first from `1963 and second after 1975 protected property interest under the 14th Amendment;" "This veteran challenges 38 CFR 20.1409(c), as used against this veteran in the 2008 BVA decision . . . :" "The VA failed to correct the 1983/2001 BVA decision the issue of the illegal termination of new growth and epistaxis . . . ;" "The 5-12-2006 rating decision . . . states in item #3 'A review of your clams folder did not show that such a 1963 rating decision existed.' However, it does exist!;" "Thus, the 10-9-2001 BVA deicison . . . contains multiple due process errors and violates and is based on violations of the VJRA;" and "This veteran has proven his claim of unemployability with multiple VA phsycian reports and other substantive evidence . . . ."

In his claim that there is a "case or controversy" which grants this federal district court jurisdiction, Corson argues:

> In this veterans case, this veterans claim of T.D.I.U., has continued un-adjudicated for 46 years. Even though this veteran has filed 7000 pages of complaints, motions, and arguments, as late as 2008, the VA has refused to make a determination of an E.E.D. for T.D.I.U. based upon all of the evidence as required by title 38 U.S.C., 1110 (2008), 38 CFR 3.303 (a)(2008).

> In this veterans case, a declaratory judgment and an injunctive remedy is proper because this veteran can show and has shown a reasonable expectation that previous injury and injury that will continue in the future will go unabated.

Based on all of the above, the undersigned finds that Corson's claims are "in substance

nothing more than a challenge to the underlying benefits decision." Weaver, supra at 520.

Regarding Corson's "constitutional challenge to the VJRA," he alleges in his Amended Complaint various violations of his due process rights in the claim adjudication process, noting his brief "contains multiple excerpts from the current case no. SC 07-3758 SC, United States Court for the Northern District of California, "which this veteran incorporates into and makes a part of this complaint." These alleged violations include that the VA acts as both trier of fact and adversary at the critical regional office stage; the absence of neutral judges or trial-like procedures at the regional office level; inability to obtain discovery; inability to compel attendance of witnesses to testify at hearings; absence of any procedure through which a veteran can obtain expedited relief in urgent cases such as an imminent suicide threat; absence of class action procedure; limited role of the CAVC and its inability to award injunctive or declaratory relief; absence of judicial authority or mechanism to enforce judicial decisions or require the regional offices to obey or comply with the rule of law; and the attorney's fee prohibition. Although the case cited by Corson is not precedential in this district, the undersigned feels compelled to note that in the very case he cites, the Northern District of California expressly denied those claims, holding first that, according to the Federal Circuit, the process at the Regional Office level is non-adversarial. Veterans for Common Sense v. Peake, 563 F.Supp.2d 1049 (N.D.Cal, 2008), citing Forshey v. Principi, 284 F.3d 1335 (Fed.Cir. 2002). Second, that "the current system for adjudicating veterans' SCDDC claims satisfies due process." Id. Third, and most significantly:

> [A]lthough the additional safeguards Plaintiffs seek would likely reduce the number of avoidable remands and erroneous deprivations, the fiscal and administrative burdens of these additional procedural requirements are significant. Plaintiffs seek, in essence, to transform the claims adjudication process at the RO level from an ostensibly non-adversarial proceeding into one in which the full panoply of trial

procedures that protect civil litigants is available to veterans.  For example, Plaintiffs seek the general right of discovery, including the power to subpoena witnesses and documents, the ability to examine and cross-examine witnesses, the ability to pay an attorney, and the right to a hearing.  Implementation and maintenance of such a system would be costly in terms of the resources and manpower that the VA would need to commit to the RO proceedings.

Id. [6]

The court in Peake cited Walters v. Nat'l Ass'n of Radiation Survivors, 473 U.S. 305, 330, 105 S.Ct. 3180, 87 L.Ed.2d 220 (1985), in which the United States Supreme Court noted the high showing necessary to "warrant upsetting Congress' judgment that this is the manner in which it wishes claims for veterans' benefits adjudicated."  See also Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc., 435 U.S. 519, 98 S.Ct 1197, 55 L.Ed. 2d 460 (1978), which holds: "Agencies are free to grant additional procedural rights in the exercise of their discretion, but reviewing courts are generally not free to impose them if the agencies have not chosen to grant them."

The court in Peake specifically addressed the plaintiffs' procedural claims of lack of opportunity to subpoena witnesses and records, disallowing payment of counsel, and requiring veterans to rely on non-neutral BVA service representatives, and held that the claims were foreclosed by Walters.

In regards to Corson's conspiracy claims, he states: "The conspiracy is the withholding of the right to a fair and impartial hearing on the issue of disability compensation in an entitlement program, like Medicare and Social Security, that creates a property interest protected by the Due

---

[6]Significantly, Peake was a class action suit challenging, in effect, the entire procedure for deciding PTSD claims.  Not only were no individual claims decisions involved, but the court expressly noted that the Plaintiff, Veterans for Common Sense, could not have brought individual claims on behalf of any veterans.

process Clause of the United States Constitution . . . . And the methodology to accomplish that conspiracy is the VJRA and due process violations." The undersigned has already found that the VJRA procedures did not violate the Due Process Clause, either on their own, or as applied to Corson. Further, he had been granted a hearing before he moved to West Virginia, and he did not appeal his latest claim to the CVAC or the Federal Circuit, even going so far as to request this Court stay any further action on that claim by the VA.

Insofar as Corson may be alleging criminal conduct on the part of Va employees, these matters are, as Defendant argues, within the purview of the U.S. Attorney General's office.

The undersigned has examined the substance of Corson's allegations, rather than their labels, to determine their true nature. Weaver, supra at 52. That Court dismissed allegations of conspiracy, fraud, and misrepresentation by VA officials involved in the claim adjudication process, concluding that they were, "in substance, nothing more than a challenge to the underlying benefits decision." Id. In Hicks v. Small, 69 F.3d 967, 970 (9th Cir. 1995), the Ninth Circuit affirmed the district court's dismissal for lack of subject-matter jurisdiction of a plaintiff's tort claims under state law for outrage or intentional infliction of emotional distress. The Ninth Circuit agreed with the district court in that case that the plaintiff's tort claims were specifically precluded by 38 U.S.C. section 511(a) because they would have necessitated consideration of issues of law and fact involving the decision to reduce the plaintiff's benefits. 69 F.3d at 970. See also Judkins, 415 F.Supp. 2d at 616-617 (granting motion to dismiss for lack of subject matter jurisdiction over a veteran's claim challenging the VA's determination of his benefits where plaintiff sought damages of $1 billion dollars for constitutional violations, negligence, punitive damages, and consequential damages, arising out of a decision on his benefits by the VA); and Murrhee v. Principi, 364 F. Supp. 2d 782, 787 (C.D. Ill. 2005) ("a

Plaintiff cannot avoid Section 4511(a) by disguising his benefits claim in constitutional clothing.").

As in <u>Weaver</u>, the undersigned finds that all of Corson's allegations are, "in substance, nothing more than a challenge to the underlying benefits decision." Further, a substantive decision on the merits of his allegations "would have necessitated consideration of issues of law and fact involving the decion[s] [regarding] the plaintiff's benefits." <u>Hicks</u>, <u>supra</u>, at 970.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that the VA's Motion to Dismiss [Docket Entry 17] be **GRANTED**. Moreover, having concluded that there is no basis for the Court to exercise subject-matter jurisdiction over Corson's claims, the undersigned **RECOMMENDS** Corson's remaining motions also be **DENIED AS MOOT**.

<u>**RECOMMENDATION**</u>

For all the above reasons, the undersigned United States Magistrate Judge respectfully **RECOMMENDS** Defendant Secretary of Veterans' Affairs' Motion to Dismiss [Docket Entry 17] be **GRANTED** and that this matter be **DISMISSED** and stricken from the Court's docket. Having concluded that there is no basis for the Court to exercise subject-matter jurisdiction over Corson's claims the undersigned further **RECOMMENDS** Plaintiff David C. Corson's Motion to Seal and for a Closed Jury Trial [Docket Entry 21] and Motion for Preliminary Injunctive Relief, Motion to Strike, Motion to Stay, and Motion for Temporary Restraining Order [Docket Entry 26] all be **DENIED AS MOOT**.

Any party may, within fourteen (14) calendar days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such

objection. A copy of such objections should be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), <u>cert</u>. <u>denied</u>, 467 U.S. 1208 (1984); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).

The Clerk of the Court is directed to send a copy of this Report and Recommendation to counsel and by Certified Mail, Return Receipt Requested, to Plaintiff *pro se*.

Respectfully submitted this 12th day of January, 2010.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE